
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2017

**TRAVARIOUS D. WHITE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-15-351          Kyle Atkins, Judge**

_____

**No. W2016-01773-CCA-R3-PC**

_____

The petitioner, Travarious D. White, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel at trial.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Christie R. Hopper, Jackson, Tennessee, for the appellant, Travarious D. White.

Herbert H. Slatery III, Attorney General and Reporter; Breanne N. Hataway, Assistant Attorney General; Jerry Woodall, District Attorney General; and Ben Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2007, the petitioner crashed a stolen vehicle during a high-speed chase with police, and then fled the scene.  Prior to the crash, the petitioner stole the vehicle and robbed two victims at gunpoint.  Consequently, a jury convicted the petitioner of carjacking, felony evading arrest, and two counts of aggravated robbery.  The trial court imposed an effective twenty-five year sentence to be served at thirty-five percent.

The petitioner subsequently challenged the sufficiency of the evidence supporting his convictions on direct appeal. This Court summarized the underlying facts leading to the petitioner's convictions as follows:

On August 26, 2007, between 10:00 and 10:30 p.m., James Walker picked up Natalie Bouie from her job at Red Robin. Mr. Walker then drove to a parking lot behind North Side School, where he and Ms. Bouie stepped out of the vehicle to talk. As the two talked, a man approached them and asked what time the last bus would arrive. Mr. Walker informed the man that the last bus had already departed.

After turning to leave, the man quickly turned back around, pulled out a black handgun, and announced that he was robbing the couple. Mr. Walker ran from the scene in an effort to lead the assailant away from Ms. Bouie. However, the assailant caught up with him and forced Mr. Walker to hand over his wallet, his cell phone, and the keys to his green GMC Denali Yukon. The assailant then stepped into the Denali and drove off with Mr. Walker's belongings around 10:45 p.m. Ms. Bouie's purse, left inside the vehicle, was also taken when the assailant drove away.

Following the robbery, Mr. Walker and Ms. Bouie walked to a gas station and called the police. At approximately 11:00 p.m., Officer Jerod Cobb of the Jackson Police Department responded to the call. After meeting the victims at the gas station, he issued a be on the lookout (BOLO) for the stolen vehicle.

Sergeant Shane Barnes of the Madison County Sheriff's Department was on patrol the night of the robbery. At approximately 11:05 p.m., shortly after receiving the BOLO dispatch describing Mr. Walker's stolen vehicle, Sergeant Barnes observed a vehicle matching the description turning from Sweetbay Drive onto North Parkway heading east. Sergeant Barnes pursued the vehicle. The driver of the vehicle attempted to turn west onto Allen Avenue at a high rate of speed but lost control and crashed, flipping the stolen vehicle several times. Sergeant Barnes witnessed the crash from approximately 200 to 300 feet away.

As he approached the accident, Sergeant Barnes witnessed a single individual emerge from the wrecked vehicle and flee the scene. Sergeant Barnes pursued the individual on foot but was unable to apprehend him.

Lieutenant Mike Turner of the Jackson Police Department supervised the collection and documentation of evidence from the scene of the crash. Along with a camouflage colored hat and a black handgun, Lieutenant Turner collected three blood swabs from the vehicle.

Less than twenty-four hours after the robbery, Mr. Walker and Ms. Bouie were shown a photo lineup including a photograph of the [petitioner]. Neither victim was able to positively identify the man who robbed them from the lineup.

At trial, Mr. Walker and Ms. Bouie both testified to being within arm's length of their assailant. They recalled that the man who robbed them wore a camouflage hat with a soft, full brim, similar to the hat recovered at the scene of the wreck. Both victims testified that their assailant wore his hat pulled down low on his head. Additionally, both victims stated that their assailant carried a black handgun similar to the gun recovered from Mr. Walker's vehicle. When asked to describe their assailant, Mr. Walker and Ms. Bouie admitted to being scared and to focusing primarily on the weapon being pointed at them. However, they both described the man as approximately five feet six to five feet seven inches tall, with a slender build and dark complexion. Neither victim noticed any facial hair on the assailant.

Though neither victim could say positively whether the [petitioner] was the man who robbed them on August 26, 2007, Mr. Walker testified that his assailant was of a similar height and build as the [petitioner]. Mr. Walker also testified that, prior to the robbery, there were no blood stains, camouflage hats, or handguns in his vehicle.

Captain Mike Holt of the Jackson Police Department testified that in August 2007, he worked in the department's Violent Crimes Unit and was assigned with investigating the case. Captain Holt testified that the Tennessee Bureau of Investigation (TBI) Crime Lab was able to generate a DNA profile based on blood swabbed from the front center console of Mr. Walker's vehicle. However, at the time, the profile did not match any existing profiles in the TBI database.

In March 2012, the TBI notified Captain Holt of a DNA match to the 2007 DNA sample taken from Mr. Walker's vehicle. The match identified the [petitioner] as the source of the DNA collected from Mr. Walker's stolen vehicle. Captain Holt testified that on March 15, 2012, he obtained a

search warrant for a buccal swab of the [petitioner]. He testified that he collected the buccal swab from the [petitioner] and that the TBI's subsequent testing of the swab confirmed the [petitioner] as the source of the DNA from the stolen vehicle.

Special Agent Charles Hardy, supervisor of the TBI's DNA data base, was qualified as an expert witness in the area of DNA collection and matching. He testified that the sample taken from the victim's vehicle in 2007 matched the sample taken from the [petitioner] in 2012. Agent Hardy confirmed that the [petitioner's] blood was in the victim's vehicle following the 2007 crash.

Following the testimony of Agent Hardy, the State concluded its case. The [petitioner] then elected not to testify, and the case was submitted to the jury, which returned a verdict of guilty as to all charges.

*State v. Travarious Dejuan White*, No. W2014-01348-CCA-R3-CD, 2015 WL 4719683, at *1-2 (Tenn. Crim. App. Aug. 7, 2015), *perm. app. denied* (Tenn. Nov. 25, 2015). After its review, this Court upheld the rulings of the trial court, noting the evidence produced at trial was sufficient to support the petitioner's convictions. *Id.* at *4.

Subsequently, the petitioner filed a *pro se* petition for post-conviction relief. The trial court appointed counsel who filed an amended petition. In his amended petition, the petitioner alleged trial counsel was ineffective in that he: (1) failed to adequately communicate with the petitioner; (2) failed to properly investigate the charges against the petitioner; (3) failed to call alibi witnesses at trial; (4) failed to properly cross-examine the State's witnesses; and (5) failed to request a mistrial or curative instruction regarding Captain Holt's testimony allegedly commenting on the petitioner's refusal to give a statement or provide a DNA swab.

The petitioner, trial counsel, and the petitioner's purported alibi witness, Randall Forrest, testified at the post-conviction evidentiary hearing. The post-conviction court summarized the evidence produced during the hearing, as follows:

[The petitioner] testified that he only spoke with [trial counsel] on the day he was appointed and two days before trial. On cross-examination, he admitted that he met with [trial counsel] at least three times. [The petitioner] further testified that he tried to get counsel to put off the trial. [The petitioner] testified that he had an alibi witness by the name of Randall Forrest. However, [the petitioner] testified that he did not give trial

counsel Mr. Forrest's name because he did not want to get Mr. Forrest into trouble.

[The petitioner] testified at trial that he was in the SUV that flipped. [The petitioner] testified he was not driving. [The petitioner] also testified that after the accident, he got out of the SUV and ran. Further, [the petitioner] testified that he did not tell the police who else was in the truck because he did not want to get anyone else in trouble. [The petitioner] testified that trial counsel did not cross-examine Sergeant Bowen, of the Jackson Police Department, effectively about the fact Sgt. Bowen could not have identified [the petitioner] from the distance he saw him fleeing the vehicle. [The petitioner] also testified that trial counsel did not effectively cross-examine Captain Mike Holt regarding the refusal to submit to the DNA swab.

Upon cross-examination, [the petitioner] admitted that he did not give his attorney names because he did not want to get anyone in trouble. He testified that he and his attorney had talked about the blood in the car and their trial strategy was that someone else was in the car. He went on to testify that the trial strategy was to say other people committed the robbery, he was just in the car.

On re-direct examination, [the petitioner] reiterated that [trial counsel] asked him about witnesses and if they would get in trouble. When [trial counsel] stated they might get in trouble, [the petitioner] did not give names because he did not want to get anyone in trouble.

Randall Forrest also testified. He testified that he was a friend of [the petitioner's] since they were 10 years old. He stated that [the petitioner] was at a barbecue at his brother's house on the day of the incident, that [the petitioner] was picked up around 10:00 or 11:00 by [a] SUV, and that he never spoke to an attorney about testifying in [the petitioner's] trial.

During cross-examination, Mr. Forrest testified that the [p]etitioner told him there was a high-speed chase and that the [p]etitioner had run from the police.

[Trial] counsel [] also testified. [Trial counsel] testified that he was appointed to represent [the petitioner]. He testified that he met with [the petitioner] four times before trial. Most of those meetings took place at the

jail in Jackson. [Trial counsel] testified that he met with the [p]etitioner for as long as they needed to meet and that he never left with the [p]etitioner saying that there were additional matters that they needed to discuss. [Trial counsel] testified that he did not discuss alibi witnesses with the [p]etitioner because the [p]etitioner did not recall where he was previously on the day of the incident. [Trial counsel] testified that the trial strategy was to admit [the petitioner] was in the vehicle and with other people. The trial strategy was to dispute the identification by the police officer and insinuate other people were in the vehicle. According to [trial counsel], the victim had given a description of the people who committed the crime but could not positively ID them. Further, the victims testified the crime was committed by one person. Therefore, the trial strategy was to admit being in the car but allege that the crime was committed by the other people in the vehicle who picked [the petitioner] up from a party shortly before the high-speed chase.

With regard to the testimony concerning the refusal to take a DNA swab, [trial counsel] testified that he thought Captain Holt was trying to make an implication due to having a weak case. Therefore, he thought dealing with the issue on cross-examination would be better than to object. He wanted to get Captain Holt, a veteran police officer, to tell the jury that the [petitioner] had no obligation to consent or help with their investigation. By approaching the issue this way, he could impeach Captain Holt's credibility.

After its review of the evidence presented, the post-conviction court held it was "unable to determine that the advice given or the services rendered to [the petitioner] were not within the range of confidence demanded of attorneys in criminal cases." Further, the post-conviction court found the petitioner "was not prejudiced as a result of any deficiency" by trial counsel. The court denied post-conviction relief, and this appeal followed.

## ANALYSIS

On appeal, the petitioner asserts the outcome of his trial would have been different absent the deficiencies of trial counsel. First, the petitioner argues trial counsel failed to "competently communicate" with him and, thus, failed to discover potential alibi witnesses. The petitioner also argues trial counsel "was ineffective for failing to move the [t]rial [c]ourt for a mistrial or a curative instruction" when Captain Holt testified concerning the petitioner's refusal to give a statement or provide a DNA swab. The petitioner also takes issue with the trial court's failure to declare a mistrial, *sua sponte*,

for the alleged improper testimony. Following our review of the record and submissions of the parties, we affirm the judgment of the post-conviction court.

The petitioner bears the burden of proving his post-conviction allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *See id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688;

*Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Initially, we note the petitioner has waived his claim that the trial court should have *sua sponte* declared a mistrial or issued a curative instruction subsequent to Captain Holt's testimony. It is well-settled in the context of post-conviction relief that any "issue raised for the first time on appeal is waived." *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) (internal citations omitted). The petitioner failed to assert the "*sua sponte*" claims in both his original and amended petitions for post-conviction relief. Accordingly, the petitioner is not entitled to relief on appeal. Furthermore, the petitioner could have argued his "*sua sponte*" claim in a motion for new trial or on direct appeal, and his failure to do so, again, results in a waiver of the issue. The petitioner is not entitled to relief. Tenn. Code Ann. §§ 40-30-106(g); -110(f).

Similarly, the petitioner alleges trial counsel was ineffective in his handling of Captain Holt's testimony at trial. The petitioner asserts trial counsel was ineffective for failing to object to Captain Holt's testimony, ask for a curative instruction addressing the alleged improper testimony, or request a mistrial. In contrast, the State asserts trial counsel "made a reasonable strategic decision to cross-examine [Captain] Holt vigorously on the testimony in question." Upon our review, we agree with the State.

The evidence produced at the post-conviction hearing details trial counsel's strategy regarding Captain Holt's testimony. Regarding trial counsel's strategy, the post-conviction court explained:

> Trial counsel testified that he felt this was a credibility case. By showing Captain Holt clearly knew the testimony he gave was improper, [trial] [c]ounsel could discredit Captain Holt's credibility. Thus, implying the case was weak because Captain Holt willingly offered improper testimony. The [p]etitioner put on no proof showing that this trial strategy was prejudicial to him in anyway. Further, this was trial strategy that the [c]ourt will not second guess.

- 8 -

Our review of the record mirrors that of the post-conviction court. Trial counsel provided a reasoned explanation of his trial strategy wherein he detailed why he chose to impeach Captain Holt's credibility during cross-examination. Specifically, trial counsel stated he cross-examined Captain Holt "quite harshly" because "[h]e was making an implication where there was no implication to be made." In contrast, in support of his argument, the petitioner testified that he did not remember if trial counsel cross-examined Captain Holt, but he did "remember them trying to make it seem like just because I didn't make – make no statement, I was guilty." The post-conviction court accredited trial counsel's testimony, and we will not disturb this on appeal. *See Tidwell*, 922 S.W.2d at 500. Additionally, the post-conviction court noted the trial court "instructed the jury clearly on the [petitioner's] right not to testify." As such, the petitioner has failed to show that trial counsel's strategy regarding Captain Holt's testimony amounted to deficient performance. *See* Tenn. Code Ann. § 40-30-110(f); *Goad*, 938 S.W.2d at 369. The petitioner is not entitled to any relief.

Next, the petitioner contends trial counsel failed to communicate with him. The record, however, does not support this assertion. At the evidentiary hearing, the petitioner stated he met with trial counsel three times prior to trial but they "never talked about the case." Conversely, trial counsel stated he met with the petitioner four times prior to trial, "for as long as [they] needed to." Trial counsel also explained that during the pre-trial meetings, he and the petitioner discussed trial strategy, stating because the petitioner's blood was found in the vehicle, "[p]art of the trial strategy was basically to admit the felony evading" charge. As stated above, the post-conviction court accredited trial counsel's testimony, and nothing in the record preponderates against the factual findings of the post-conviction court. *See Tidwell*, 922 S.W.2d at 500. The evidence produced at the evidentiary hearing supports that the substance of the meetings between trial counsel and the petitioner involved detailed discussions of the petitioner's case and the trial strategy for the same. Accordingly, the petitioner has not proven trial counsel was ineffective in this respect.

Finally, the petitioner asserts trial counsel failed to properly investigate his case by failing to call witnesses on his behalf at trial. However, the petitioner admitted that he did not disclose any potential witnesses to trial counsel for fear of getting them in trouble, specifically mentioning Randall Forrest as an unnamed witness. The petitioner even admitted that when trial counsel told him "it's a possibility" that witnesses could get in trouble, he decided not to mention any names. The post-conviction court explained,

> The [p]etitioner clearly testified that he did not give his trial counsel the names of the people in the vehicle or Mr. Forrest's information because he did not want to get anyone in trouble. Therefore, trial counsel could not

have gathered witnesses or presented an alibi defense without the defendant's cooperation in getting those names.

Further, Mr. Forrest's testimony during the post-conviction hearing, wherein he discussed being with the petitioner on the night in question, does not save this claim as the post-conviction court accredited the testimony of trial counsel. *See Tidwell*, 922 S.W.2d at 500. Therefore, the petitioner has failed to present evidence showing trial counsel was deficient in investigating the petitioner's case by failing to call undisclosed witnesses at trial. *See* Tenn. Code Ann. § 40-30-110(f). The petitioner has failed to meet the burden required of him and is, therefore, not entitled to any relief as to this issue.

In denying post-conviction relief, the post-conviction court stated, "the [p]etitioner was not prejudiced as a result of any deficiency by [trial counsel]." We agree with the trial court's assessment of the petitioner's claims. No evidence exists in the record to support his attack on trial counsel's performance or how the alleged deficient performance affected the outcome of his trial. *See Strickland*, 466 U.S. at 687. The petitioner is not entitled to post-conviction relief for his claim of ineffective assistance of counsel.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE

- 10 -